614 A.2d 1313

Billy E. KLINE and Jan E. Kline

v.

CENTRAL MOTORS DODGE, INC.

No. 21, Sept. Term, 1992.

Court of Appeals of Maryland.

Nov. 16, 1992.

Debra Gardner (Legal Aid Bureau, Inc., on brief), Frederick, for appellants.

Roger Schlossberg (Thomas M. DiGirolamo, Schlossberg & DiGirolamo, on brief), Hagerstown, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and BELL, JJ.

RODOWSKY, Judge.

In this case a motor vehicle securing a retail installment sales agreement was repossessed and resold at a sale that was not a public auction sale. We shall hold that such resales must be conducted in a commercially reasonable manner.

In January 1988, appellee, Central Motors Dodge, Inc. (Central), sold a used 1986 Dodge Vista to appellants, Billy E. Kline and Jan E. Kline (the Klines). When sold, the car's odometer registered approximately 72,000 miles. The transaction was a retail installment sales agreement, with a cash price of $6,995, and an amount financed of $8,252.15. Central assigned the agreement to Chrysler Credit Corporation (Chrysler).

The Klines defaulted, and in April 1990 Chrysler repossessed. When the Klines were unable to redeem, Chrysler invoked its right of recourse against Central and reassigned the contract to Central.

At the time of repossession, the odometer registered approximately 111,000 miles. The vehicle had suffered some body damage during the Klines' possession. Central placed the car on its wholesale lot for resale, without repairing or reconditioning the vehicle. The car was never offered for sale to retail purchasers.

On May 8, 1990, Central sold the car for $800 to Kyner's Auto Sales. The resulting deficiency was $5,401.28.

Thereafter, Central sued for the deficiency in the District Court of Maryland sitting in Washington County. On the

Klines' demand for a jury trial, the case was removed to the circuit court. Central moved for, and was granted, summary judgment. The Klines appealed but before consideration of the matter by the Court of Special Appeals, this Court issued the writ of certiorari on its own motion. 326 Md. 435, 605 A.2d 137.

 This retail installment sales agreement is governed by the Retail Installment Sales Act (RISA), Md.Code (1975, 1990 Repl.Vol.), §§ 12–601 through 12–636 of the Commercial Law Article (CL). When Central sued for the deficiency and moved for summary judgment, the Klines, in opposition thereto, injected a defense under RISA.

RISA § 12–626(e)(4) provides that if the resale of security results in a deficiency,

"the buyer is liable for the deficiency if:

(i) The agreement provides for liability for a deficiency; and

(ii) The holder has complied with all requirements of this subtitle, including the notice requirement of § 12–624(d)."

The Klines essentially argued to the circuit court that Central had not complied with one of the requirements of the RISA subtitle, specifically § 12–626(e)(1)(ii). Paragraph (1) reads:

"The provisions of this subsection (e) apply to:

(i) A public sale held under the provisions of this section; and

(ii) Any other bona fide public or private sale of goods which had a cash price in excess of $2,000 at the time of their purchase by the buyer, if the buyer has not paid at least 50 percent of the cash price of the goods or if he has paid that amount but has not requested a public sale under subsection (a) of this section."

It is undisputed that the "public" sale referred to in subsection (e)(1)(i) is the public auction sale referred to in RISA § 12–626(a)–(d). At the hearing on summary judgment the Klines argued that the "bona fide public or private sale" referred to in subsection (e)(1)(ii) was a sale conducted in a

commercially reasonable manner and that Central had failed to demonstrate that the subject resale was conducted in that manner. The Klines' legal position is that "bona fide," as used in § 12–626 to describe sales after repossessions, has substantially the same meaning as the words, "commercially reasonable," have in § 9–504(3) of the Maryland Uniform Commercial Code (U.C.C.). The latter statute deals with the secured party's disposition of collateral ("[E]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.").

Central, on the other hand, argued to the circuit court that "bona fide" in RISA § 12–626(e) has its legal dictionary meaning. Central argued that "bona fide" meant " 'in or with good faith; honestly, openly, and sincerely; without deceit or fraud.' " *See* Black's Law Dictionary 160 (5th ed.1979). Based on discovery that it had furnished, Central argued that it had obtained three bids and had sold the vehicle to the highest bidder, without hint of collusion or fraud.[1]

The circuit court, in a brief written opinion, rejected the Klines' argument that a bona fide sale meant a commercially reasonable sale. That opinion gave no indication that the circuit court was applying some meaning to "bona fide" in RISA § 12–626(e) that lay between the absence of fraud, as Central had argued, and the commercial reasonableness position urged by the Klines.

In this Court the parties essentially draw the same line between their positions. Here, Central has clarified its position by advocating that "bona fide" be given the same meaning in RISA § 12–626(e) as the words, "good faith,"

---

1. If Central's construction of "bona fide" in RISA § 12–626(e) were correct, then that construction would control over U.C.C. § 9–504(3). U.C.C. § 9–203(4) states the applicable rule, namely:

"A transaction, although subject to this title [secured transactions], may also be subject to other statutes regulating loans and retail installment sales, such as Title 12, subtitles 3 and 6 of this article and the like, and in the case of conflict between the provisions of this title and any such statutes, the provisions of such statute control."

have in U.C.C. § 1–203 ("Every contract or duty within Titles 1 through 10 of this [Commercial Law Article] imposes an obligation of good faith in its performance or enforcement."). In § 1–203 "good faith" means "honesty in fact in the conduct or transaction concerned." U.C.C. § 1–201(19).

We agree with the construction advocated by the Klines. It is consistent with the legislative history, to the extent that the history can be determined. More convincing is the fact that the administrative interpretation of "bona fide" has equated those words with commercial reasonableness and that the General Assembly has clearly indicated its agreement with that administrative interpretation.

The concept of a bona fide public or private sale was not part of RISA as it was originally enacted by Chapter 851 of the Acts of 1941. The concept came into RISA by Chapter 806 of the Acts of 1965. Prior to 1965 there were no deficiency judgments permitted on RISA repossessions, unless the buyer had paid at least fifty percent of the cash price and had satisfied other conditions of the buyer's right to require a public auction sale. Only in the event that the public auction sale resulted in a deficiency was the holder of the retail installment sales agreement permitted to seek a deficiency judgment. The 1965 amendment expanded the holder's right to seek a deficiency. *See Union Trust Co. v. Tyndall*, 290 Md. 102, 108–10, 428 A.2d 428, 431–32 (1981).

Prior to the 1965 amendment RISA was codified in Md. Code (1957), Art. 83, §§ 128–153. Chapter 806 of the Acts of 1965 amended, *inter alia,* Art. 83, § 143(b) as follows (italics indicate new matter added to the existing law):

"The proceeds of such sale, plus the deposit required in subsection (a) above, *or the proceeds of any other bona fide public or private sale, as to goods having a cash price at the time of the purchase by the buyer in excess of two thousand dollars ($2,000.00), where the buyer has not paid at least 50% of the cash sale price of the goods or where the buyer has paid 50% of the cash sale price but has not requested a public sale pursuant to subsection (a) of this section,* shall be applied: (1) To the actual

and reasonable cost of the sale; (2) to the actual and reasonable cost of retaking and of storage; (3) to the unpaid balance owing under the contract at the time such goods were repossessed; (4) any balance remaining shall be paid to the buyer and if a deficiency arises the buyer shall be liable for said deficiency *if the contract provides for such deficiency liability and if compliance has been made with the other provisions of this subtitle including the notice required by Section 141(c) of this subtitle.* A written statement showing the disposition of such proceeds and deposit, shall be furnished to the buyer by the seller."

Central points out that the Uniform Commercial Code had been adopted in Maryland by Chapter 538 of the Acts of 1963. *See* Md.Code (1957, 1964 Repl.Vol.), Art. 95B. Central notes that Article 95B, § 9–504(3), imposed the commercial reasonableness standard for public or private dispositions of the collateral in secured transactions under the U.C.C., but when RISA was amended two years later, the General Assembly used "bona fide" to describe the sale of the collateral in RISA transactions. Central submits that the General Assembly must have intended "bona fide" in RISA to have a meaning different from commercial reasonableness.

It is far from clear that the conclusion urged by Central is correct, particularly when additional historical facts are considered. In the 1963 session of the General Assembly, House Bill 1110, utilizing "bona fide" to describe the public or private sale following a RISA repossession, was introduced to expand deficiency judgments, but it was not enacted. The same bill was introduced by the same sponsor in the 1964 session of the General Assembly as House Bill 192, but it was not enacted. The 1963 and 1964 proposals would have permitted deficiency judgments arising out of any RISA transaction. In those years only sales of goods having a cash price of $2,000 or less were within the protection of RISA. The same sponsor introduced in the 1965 session House Bill 597, which modified the proposal

from its prior form. House Bill 597 enlarged the basic coverage of RISA to include transactions involving goods having a cash price of $5,000 or less, but it allowed a deficiency judgment only if the cash price of the goods was in excess of $2,000. The bona fide sale provisions were unchanged. It was in that form that House Bill 597 was enacted as Chapter 806 of the Acts of 1965.

Two aspects of this history are relevant to the issue before us. First, use of "bona fide" to describe sales following repossessions in RISA transactions had its origins before the Uniform Commercial Code was enacted. This minimizes any significance of the difference in terminology between RISA and the U.C.C. Second, the 1965 amendment to RISA expanded consumer rights by making RISA applicable to a larger class of installment sales while permitting deficiency judgments against buyers who had not complied with RISA § 12–626(a)–(b) only in the range between the former $2,000 cash price ceiling of goods and the new $5,000 cash price ceiling. *See* 63 Op.Att'y Gen. 92 (1978). The compelling inference is that the 1965 legislation was a compromise which expanded deficiency judgments only in exchange for enlarging consumer protection. Consequently, it seems unlikely that the General Assembly intended "bona fide" to mean only the absence of fraud. Honesty in fact as the meaning of good faith has been described by Professor Hawkland as a " 'subjective' ('white heart and empty head') standard." 1 Hawkland, *Uniform Commercial Code Series* § 1–203:01, at 155 (1984).

Further, Maryland case law prior to adoption of the U.C.C. had given meaning to the concept of a good faith sale, in the context of a seller's resale, that was substantially the same as the concept of commercial reasonableness adopted by the U.C.C. for a seller's cover after a buyer's breach. *See* U.C.C. § 2–706(1) ("Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price...."). Official Comment 1 to U.C.C. § 9–504 in part states:

"The only restriction placed on the secured party's method of disposition is that it must be commercially reasonable. In this respect this section follows the provisions of the section on resale by a seller following a buyer's rejection of goods (Section 2–706)."

In *Obrecht v. Crawford*, 175 Md. 385, 398–99, 2 A.2d 1, 8 (1938) (citations omitted), we said:

"Where there has been an actual resale, the measure of damages is formally different, since there it is the difference between the lesser price realized at the resale and the contract price, if the resale was made in good faith. A sale in good faith is a 'fair sale * * * according to established business methods, with no attempt to take advantage of the vendee', and the burden of proving that the sale was so made seems to be upon the seller.

"But whether the action is to recover damages merely, or to recover the loss resulting from a resale, its purpose is to compensate the seller for the loss he has actually suffered, which is theoretically the same in either case, since obviously the seller could have no right to vary the measure of his damages by electing to pursue one course or the other. In measuring the seller's loss resulting from a resale, the market price of the commodity at the place and time of delivery is no less vital than in an action by the seller for damages caused by the buyer's refusal to accept where there has been no sale. But where in an action to recover the loss resulting from a resale the seller proves that the resale was fair and made in good faith, the burden of persuasion shifts to the defendant to show that it was not so made. Good faith as used in that formula is a symbolic expression denoting that the seller in making it exercised reasonable care, prudence, and diligence."

Thus, the probability is that "bona fide," as drafted in 1963 and later embodied in Chapter 806 of the Acts of 1965, was used in the sense that the reselling seller would exercise reasonable care, prudence, and diligence in the resale, before seeking damages for breach by way of deficiency.

What is reasonable depends upon the circumstances. In any event, the legislative history does not demonstrate that the General Assembly intended "bona fide" to mean only honesty in fact when describing the public or private sale in RISA § 12–626(e)(1)(ii).

Indeed, developments subsequent to the 1965 amendment of RISA demonstrate that "bona fide" in RISA § 12–626(e)(1)(ii) was intended by the General Assembly to mean commercially reasonable. The Commissioner of Consumer Credit (Commissioner) has adopted regulations dealing with the repossession of goods under RISA. Md.Regs.Code (COMAR), tit. 9, §§ .04.03.01–.04.03.03 (1982). These regulations were proposed in 1980, 7 Md.Reg. 1997–99 (Oct. 17, 1980), and with modifications not relevant to the matter before us, adopted effective June 12, 1981, 8 Md.Reg. 1061 (June 12, 1981). COMAR § .09.04.03.02A requires the seller in all private sales of repossessed goods to render a full accounting to the buyer and to file a copy of the accounting with the Commissioner. The regulation explains, parenthetically, that this requirement "is necessary in order to determine whether in fact the sale was 'bona fide' as required by Commercial Law Article, § 12–626." COMAR § .09.04.03.-02B specifies the contents of the accounting. COMAR § .09.04.03.02C then provides:

"In addition to the above, the accounting also shall include other information which is required to allow the Commissioner to determine whether the sale was bona fide, including:

(1) The purchaser's name, address, and business;

(2) The number of bids sought and received; and

(3) Any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality."

Paragraph C of this regulation reflects the interpretation of "bona fide" by the administrator charged with enforcement of RISA. *See* RISA § 12–631. The administrator's inter-

pretation is inconsistent with limiting "bona fide" to honesty in fact.

It is also clear that the General Assembly considers a bona fide sale under RISA § 12–626 to be a commercially reasonable sale. This conclusion is demonstrated by Chapter 765 of the Acts of 1987. Chapter 765 amended the repossession provisions in the interest and usury statute, CL § 12–115(j), in the open end credit grantor statute, CL § 12–921(j), and in the closed end credit grantor statute, CL § 12–1021(j), to provide for private sales of repossessed collateral. A senate committee staff report describing the bill (S.B. 839) explained that its purpose was to provide an option for the private sale of repossessed property in addition to public sale. The report said:

"Currently, public sales often do not offer a lender the best advantage of obtaining the best resale price on repossessed goods, as often buyers are unable to attend, or are buying goods at wholesale for later retail resale. By permitting private sales, a lender will be better able to attract buyers who are purchasing items for personal use, and are therefore willing to pay a more reasonable price."

In effecting that objective, Chapter 765 requires, for each of the three types of credit extensions involved, that "[a]ny sale of repossessed property must be accomplished in a commercially reasonable manner." *See* CL § 12–115(j)(1); CL § 12–921(j)(1); CL § 12–1021(j)(1). Chapter 765 then requires, in all cases of private sales of repossessed goods, that an accounting be filed with the Commissioner. *See* CL § 12–115(j)(2); CL § 12–921(j)(2); CL § 12–1021(j)(2). The information required to be furnished tracks that required under COMAR § .09.04.03.02 for RISA private sales of repossessed goods.

To illustrate, we set forth the text of CL § 12–1021(j)(1) and (2) in the margin.[2]

---

**2.** CL § 12–1021(j)(1) and (2) now reads:
"*Sale or auction—Authorized; notice; commercially reasonable manner; accounting.*—(1) The credit grantor shall sell the property

As introduced, Senate Bill 839 would have applied only to open end credit grantors and would have required resales to be commercially reasonable. Amendments enlarged coverage to include interest and usury and closed end credit grantors. It was these amendments that incorporated the substance of the Commissioner's regulation of resales under RISA. A staff memorandum again explained that public auction sales do not, under certain circumstances, generate the best possible price. That memorandum described these amendments as follows:

---

that was repossessed at private sale (subject to the provisions of paragraph (2) of this subsection) or at public auction. At least 10 days before the sale, the credit grantor shall notify the consumer borrower in writing of the time and place of the sale, by certified mail, return receipt requested, sent to the consumer borrower's last known address. Any sale of repossessed property must be accomplished in a commercially reasonable manner.

(2) In all cases of a private sale of repossessed goods under this section, a full accounting shall be made to the borrower in writing and the seller shall file a copy of this accounting with the Commissioner of Consumer Credit. This accounting shall contain the following information:

(i) The unpaid balance at the time the goods were repossessed;

(ii) The refund credit of unearned finance charges and insurance premiums, if any;

(iii) The remaining net balance;

(iv) The proceeds of the sale of the goods;

(v) The remaining deficiency balance, if any, or the amount due the buyer;

(vi) All expenses incurred as a result of the sale;

(vii) The requirement that the purchaser's name, address, and business must be filed by the seller with the Commissioner of Consumer Credit and that the Commissioner may provide the information to the borrower whenever it is necessary to ascertain that:

1. The sale was accomplished in a commercially reasonable manner; and

2. Any alleged deficiency balance due the seller is, in fact, due;

(viii) The number of bids sought and received; and

(ix) Any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality."

CL §§ 12–115(j)(1)–(2) and 12–921(j)(1)–(2) are essentially the same. *See Biggus v. Ford Motor Credit Co.*, 328 Md. 188, 206–07, 613 A.2d 986, 995–96 (1992).

"These facts are recognized under [RISA]; however, to prevent favored buyer private sales that are not 'bona fide' (commercially reasonable), the Commissioner of Consumer Credit has a regulation that allows a full review of all private sale transactions under the [RISA] subtitle. These amendments, if accepted, will codify the pertinent consumer protection measures of that regulation and prevent private sales that are made to the detriment of the defaulting buyer/borrower."

In view of the foregoing, we hold that the bona fide sale required by RISA § 12–626 is the same as the commercially reasonable sale required by CL § 12–115(j), CL § 12–921(j), and CL § 12–1021(j). It follows that the Circuit Court for Washington County applied an erroneous legal standard when it granted summary judgment in favor of Central.

JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE, CENTRAL MOTORS DODGE, INC.

CHASANOW, J., concurs only in the judgment.